IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LARRY DEAN NAVE, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. No. 11-673-LPS |
| | : |
| COMM. CARL DANBERG, et al., | : |
| | : |
| Defendants. | : |

Larry Dean Nave, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

Joseph Clement Handlon, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

February 28, 2013
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Larry Dean Nave ("Plaintiff") filed this action on August 1, 2011, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. (D.I. 3, 11) The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Presently before the Court are Defendants' Motion to Dismiss and Plaintiff's Request for Counsel, Motion for Discovery, Motion for Extension of Time, and Motions for Leave to Amend. (D.I. 22, 23, 24, 26, 33, 40) For the reasons that follow, the Court will grant the Motion to Dismiss, will grant in part and deny in part the Motions to Amend, will deny the Request for Counsel, will deny without prejudice as premature the Motion for Discovery, and will deny as moot the Motion for an Extension of Time.[1]

## II. BACKGROUND

In 1983, Plaintiff pled guilty to rape second degree, conspiracy second degree, burglary first degree, and robbery first degree. He was sentenced to twenty years for the rape charge, five years for the conspiracy charge, ten years for the burglary charge, and ten years for the robbery charge, all sentences to be served consecutively. *See State v. Nave*, 2005 WL 1953079 (Del. Super. Ct. July 29, 2005). Plaintiff, and three fellow inmates, escaped from prison in December 1986 and, following a jury trial, he was convicted of escape after conviction, two counts of conspiracy in the second degree, kidnapping in the second degree, and felony theft; he was sentenced to a forty-nine year term of imprisonment. *See McCoy v. State*, 542 A.2d 1215 (Del. May 25, 1988) (table).

---

[1] Plaintiff's most recent Motion to Amend merely asks the Court to consider a court decision. (*See* D.I. 40) This is not a proper ground for amendment. Therefore, the Court will deny this motion as moot.

1

On August 22, 2006, the State of Delaware Board of Parole ("Board of Parole") denied Plaintiff release to parole supervision. The Board of Parole's letter listed a number of factors for the denial, recommended Plaintiff develop a treatment plan, and required Plaintiff to complete other programs to improve his institutional behavior. (D.I. 1 Ex. A) The original Complaint (D.I. 3) and Amended Complaint (D.I. 11) allege that Defendants: (1) have denied Plaintiff the treatment programs he is required by the Board of Parole to complete; (2) have knowledge of the denial of the treatment programs; (3) are impeding his right to go before the Board of Parole so they may cover up the denial of the mandated treatment programs; (4) have changed his judgment and sentencing order without a court order, notice, or hearing; (5) are denying him work release; (6) on November 14, 2008, ordered him transferred to the security housing unit ("SHU") from the medium high housing unit ("MHU") without notice or hearing; (7) treat him differently from other inmates who also have escape convictions by permanently housing him in SHU; (8) house him in an area of SHU designed for punishment; (9) do not treat him equally to all other Level 4 SHU inmates; (10) do not allow him to shave; and (11) treat him differently from other inmates with regard to due process rights, classification, discipline, grievances, and all other policies and procedures. In addition, Plaintiff alleges that Defendant Bureau Chief Michael Deloy ("Deloy") refused to return his application to the Board of Parole. (D.I. 11)

Defendants move to dismiss on the grounds that Plaintiff has no constitutional right to treatment programs, the placement in SHU allegations fail to state a claim upon which relief may be granted, and all claims fail to adequately allege Defendants' personal involvement. Plaintiff

opposes the Motion and has filed a Motion to Amend.[2] The proposed amended complaint attached to the Motion to Amend (D.I. 33) contains the same basic claims but in much greater detail than previously. Defendants oppose amendment.

### III.    DISMISSAL AND AMENDMENT

#### A.    Legal Standards

##### 1.    Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[2]The Court will deny as moot Plaintiff's Motion for an Extension of Time (D.I. 26) to file his opposition.

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996). Because Plaintiff proceeds *pro se*, his pleadings are liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

### 2. **Rule 15(a)**

Pursuant to Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course within twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a Rule 12(b) motion, whichever is earlier. Otherwise, a party may amend its pleading only with the opposing party's written consent or the court's leave. Rule 15 provides that the Court should freely give leave to amend when justice so requires.

The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990). Amendment, however, is not automatic. *See*

4

*Dover Steel Co., Inc. v. Hartford Accident and Indem.*, 151 F.R.D. 570, 574 (E.D. Pa. 1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

    **B.**    **Discussion**

        **1.**    **Treatment Programs**

Plaintiff alleges that Defendants are denying him treatment programs he is required to complete for parole consideration. Defendants move for dismissal of all claims related to Plaintiff's participation in treatment programs on the grounds that they fail to state a claim upon which relief may be granted.

As will be discussed below, there is no constitutional right to parole. Moreover, prisoners have no constitutional right to drug treatment or other rehabilitation. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."); *see also Abraham v. Delaware Dep't of Corr.*, 331 F. App'x 929, 931 (3d Cir. June 19, 2009); *Groppi v. Bosco*, 208 F. App'x 113, 115 (3d Cir. Dec. 12, 2006).

5

While the Board of Parole has stated that Plaintiff is required to complete certain programs for parole consideration, it is not constitutionally required that Defendants provide the programs to Plaintiff.[3] Accordingly, the Court will grant the Motion to Dismiss all claims related to Plaintiff's participation in the treatment programs required by the Board of Parole and will deny as futile Plaintiff's Motion to Amend the treatment program claims.

2.  **Housing Assignment**

Plaintiff alleges that he was improperly transferred to SHU, to a section designed for punishment, while other inmates with escape convictions are housed elsewhere. Defendants move for dismissal on the grounds that these allegations fail to state a claim upon which relief may be granted.

It is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 221-222 (2005); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). The custody, placement, or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

"'As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due

---

[3]Plaintiff's completion of the required treatment programs will not necessarily result in release to parole supervision. On August 23, 2006, Plaintiff was denied parole due to a number of factors including the violent nature of offense, prior failure parole/probation (escape), insufficient participation in appropriate treatment, attorney general opposition, and poor institutional conduct. (D.I. 1 Ex. A)

Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)); *see also Sandin v. Conner*, 515 U.S. 472, 480 (1995). Therefore, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally protected liberty interest in remaining free from housing in SHU. Here, however, neither Delaware law nor Department of Correction regulations create a liberty interest in a prisoner's classification within an institution. *See* 11. Del. C. § 6529(e).

In addition, State created liberty interests protected by the Due Process Clause are generally limited to restraints on prisoners that impose an "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 484). In deciding whether a protected liberty interest exists, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *See Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003). The Third Circuit has held that a State prisoner's confinement in administrative segregation for fifteen months did not impose an atypical and significant hardship on the prisoner. *See Griffin*, 112 F.3d at 706-09; *see also Mearin v. Vidonish*, 450 F. App'x 100 (3d Cir. Nov. 3, 2011) (affirming that placement in administrative custody for periods of 256 days and 343 days did not trigger constitutionally protected liberty interest); *Scerbo v. Lowe*, 326 F. App'x 652, 656 (3d Cir. May 1, 2009) (eighteen-month period of confinement in maximum security custody did not implicate protected liberty interest); *Young v. Beard*, 227 F. App'x 138 (3d Cir. Mar. 20, 2007) (inmate sentenced to aggregate of 930 days in disciplinary confinement,

without dayroom or telephone privileges, did not constitute atypical and significant hardship sufficient to trigger liberty interest).

As Plaintiff alleges, a transfer from MHU to SHU results in greater restrictions. Regardless, the transfer from one classification to another did not violate his due process rights. Accordingly, the decision to place Plaintiff in SHU cannot be viewed as falling outside the scope of "the sentence imposed upon him [or] otherwise violative of the Constitution." Hence, Plaintiff cannot state a claim a claim for violation of a liberty interest created by the Due Process Clause or State law with respect to his custody level classification.

For the above reasons, the Court will grant Defendants' Motion to Dismiss the claims relating to Plaintiff's transfer to SHU and will deny as futile Plaintiff's Motion to Amend the same claims.

### 3. The Parole Process

Plaintiff raises claims against Deloy for his failure to return Plaintiff's parole application to the Board of Parole. Defendants move to dismiss the claim, arguing that Plaintiff failed to allege plausible facts to state a claim. The proposed amended complaint contains additional facts and exhibits to support the claim, including a June 2, 2011 letter from the Board of Parole, stating it had received Plaintiff's application on November 10, 2010 and forwarded it to the Bureau Chief of the Department of Correction for processing that same day. (D.I. 33 Ex. S) As of the date of the letter (June 2, 2011), the Board of Parole had not received the report and recommendation from the Department of Correction and advised Plaintiff, "until we receive that information, your hearing cannot be scheduled." (*Id.*)

8

An inmate has no constitutional right to parole. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("A state may . . . establish a parole system, but it has no duty to do so."); *Eskridge v. Casson*, 471 F.Supp. 98, 101 (D. Del. 1979) ("[N]o prisoner can legitimately claim that the Delaware Parole Statute confers . . . a legally enforceable right to be paroled."). "[O]nce a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980). Hence, Plaintiff has a due process right in being treated fairly during the parole process. *See Jubilee v. Horn*, 975 F.Supp. 761, 764–65 (E.D. Pa.1997), *aff'd*, 151 F.3d 1025 (3d Cir. 1998); *Bermudez v. Duenas*, 936 F.2d 1064, 1067 (9th Cir. 1991) (recognizing that "early release statutes can create 'a liberty interest protected by due process guarantees'") (quoting *Greenholtz*, 442 U.S. at 12).

The allegations in the original Complaint were deficient. However, liberally construing the allegations raised against Deloy in the proposed amended complaint, as the Court must, Plaintiff appears to have stated a cognizable due process claim. Therefore, the Court will grant Defendants' Motion to Dismiss as to the application process claims raised against Deloy and will Grant Plaintiff's Motion to Amend the same claims found at paragraphs 33, 34, 58, 59, and 60 of the proposed amended complaint.

### 4. **Grievance**

Paragraphs 30, 31, 37, 38, and 39 of the proposed amended complaint contain allegations regarding the grievance process. While Plaintiff couches the claim in terms of equal protection,

9

it is clear from the allegations that he is not satisfied with responses to his grievance and the grievance process as a whole.

The filing of prison grievances is constitutionally protected activity. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. Nov. 6, 2006). To the extent the claims in Plaintiff's proposed amended complaint are based upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing constitutional right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. Aug. 18, 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

Plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, that they were denied, or that the grievance process is inadequate. Because amendment is futile, the Court will deny Plaintiff's Motion to Amend as to the foregoing claims.

### 5. **Retaliation**

Paragraphs 10, 11, and 27 of the proposed amended complaint allege retaliation by Perry Phelps ("Phelps") following notification to the Board of Parole that Plaintiff would not be allowed to participate in treatment programs. Plaintiff alleges that, thereafter, his cell was searched by order of Phelps. Also, for a minor charge that normally has no serious repercussions, Plaintiff was transferred to SHU.[4]

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103,

---

[4] A prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. *See Allah*, 229 F.3d at 224-25.

111-12 (3d Cir. 1990). In screening this claim, the Court assumes, without deciding, that the notification to the Board of Parole is a form of protected speech. The First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981).

Proof of a retaliation claim requires a plaintiff to demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *See Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (stating factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights"). The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *See id.*

11

As discussed above, the Court assumes, without deciding, that Plaintiff engaged in protected speech. Hence, Plaintiff has met the first element of a retaliation claim. The allegations in the Complaint also successfully satisfy the second and third prongs of the prima facie test. Plaintiff's transfer to SHU may qualify as adverse treatment for the purposes of a retaliation claim. *See Atkinson v. Taylor*, 316 F.3d 257, 270 (3d Cir. 2003) (stating prisoner's transfer to administrative segregation qualified as adverse action). Additionally, Plaintiff has alleged causation through the suggestive timing of the punishment he received subsequent to notification to the Board of Parole. Therefore, the Court will grant the Motion to Amend as to the retaliation claim against Phelps.

### 6. Personal Involvement/Respondeat Superior

Defendants move for dismissal on the remaining claims for lack of the requisite allegations of personal involvement. Plaintiff's proposed amended complaint is more detailed that his original filings.

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior; in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *See Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. Aug. 18, 2010) (citing *Iqbal*, 556 U.S. at 677).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit – here masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (internal quotation marks omitted). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus

or affirmative link between the directions and the specific deprivation of constitutional rights at issue."[5] *Id.* at 130.

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created policies such that the subordinates had no discretion but to apply the policies in a fashion which actually produced the alleged deprivation; *e.g.*, supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks*, 885 F.2d 1099, 1117-18 (3d Cir. 1989); *see also Iqbal*, 56 U.S. at 677-87; *City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. Apr. 11, 2005).

While Plaintiff's proposed amended complaint contains many facts, it does not cure the pleading deficiencies in the original pleadings. Danberg is named as a defendant based on his supervisory position. The proposed amended complaint provides no specific facts as to how Danberg violated his constitutional rights, how he expressly directed the deprivation of Plaintiff's constitutional rights, or how he created policies wherein subordinates had no discretion but to deprive Plaintiff of his rights. In addition, with the exception of the due process application claim against Deloy and the retaliation claim against Phelps, the remaining allegations as to all

---

[5]The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *See Santiago*, 629 F.3d at 130 n.8; *see also, e.g., Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us.").

Defendants fail to allege the requisite personal involvement for all legal claims set forth in Section IV of the proposed amended complaint. The Court finds these allegations do not satisfy the *Iqbal* pleading requirements.

For the above reasons, the Court will grant Defendants' Motion to Dismiss for lack of personal involvement and will deny Plaintiff's Motion to Amend as to all remaining claims. Because there are no cognizable claims against Danberg and Hosterman, the Court will dismiss these defendants.

## IV.   REQUEST FOR COUNSEL

Plaintiff seeks counsel on the basis that: (1) he is unskilled in the law; (2) the issues are complex; (3) the case may turn on credibility determination; (4) as an inmate he is not allowed to view confidential documents; (5) he cannot attain and afford counsel on his own behalf; (6) counsel would serve the best interests of justice; and (7) without counsel he will be denied equal treatment of the law. (D.I. 23)

A plaintiff does not have a constitutional or statutory right to an attorney. *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).[6] However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *See Tabron*, 6 F.3d at 155.

Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints

---

[6]*See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) – now § 1915(e)(1) – does not authorize a federal court to require unwilling attorney to represent indigent civil litigant).

15

placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (5) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56.

After reviewing Plaintiff's Motion, the Court concludes that the case is not so factually or legally complex that requesting an attorney is warranted. To date, the filings in this case demonstrate Plaintiff's ability to articulate his claims and represent himself. Thus, in these circumstances, the Court will deny without prejudice to renew Plaintiff's Request for Counsel. (D.I. 23) Should the need for counsel arise later, the issue can be addressed at that time.

## V. DISCOVERY

Plaintiff's Motion for Discovery (D.I. 24) will be denied without prejudice as premature. Plaintiff's proposed amended complaint will soon be filed. Thereafter, Defendants will have an opportunity to answer or otherwise plead, as provided by the Federal Rules of Civil Procedure. Plaintiff shall abide by the Federal Rules of Civil Procedure in seeking discovery from Defendants.

## VI. CONCLUSION

For the above reasons, the Court will grant the Motion to Dismiss (D.I. 22), will grant in part and deny in part and the Motion to Amend (D.I. 33), will deny as moot the Letter/Motion to Amend (D.I. 40), will deny the Request for Counsel (D.I. 23), will deny without prejudice as premature the Motion for Discovery (D.I. 24), and will deny as moot the Motion for an Extension of Time (D.I. 26). Carl Danberg, Rick Kearney, and Ron Hosterman will be dismissed as

16

Defendants.[7] Upon filing of the proposed amended complaint the case will proceed with the retaliation claim against Perry Phelps and the parole application claim against Michael Deloy.

An appropriate Order will be entered.

---

[7]Plaintiff failed to show cause why Kearney should not be dismissed as a Defendant for failure to serve pursuant to Fed. R. Civ. P. 4(m). (*See* D.I. 29) In addition, Plaintiff has voluntarily dismissed Kearney, as he is not named as a defendant in Plaintiff's proposed amended complaint.

17