IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LARRY DEAN NAVE, | : | |
| Plaintiff, | : | |
| v. | : | Civ. No. 11-673-LPS |
| WARDEN PERRY PHELPS, et al., | : | |
| Defendants. | : | |

Larry Dean Nave, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

Stuart B. Drowos, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

August 11, 2014
Wilmington, Delaware

[signature] 

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Larry Dean Nave ("Plaintiff") filed this action on August 1, 2011, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] (D.I. 3, 11, 54) The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Presently before the Court are Plaintiff's Motion for Leave to Amend Complaint, opposed by Defendants, and Defendants' Motion for Summary Judgment, opposed by Plaintiff.[2] (D.I. 62, 74, 75) For the reasons that follow, the Court will deny the motion to amend and will grant the motion for summary judgment.

## II. BACKGROUND

The claims that remain are retaliation claims (D.I. 54 at ¶¶ 10, 11, 27) and parole application claims (*id.* at ¶¶ 33, 34, 58, 59, 60). In Plaintiff's opposition to Defendants' motion for summary judgment, he requests the voluntary dismissal of Defendant Deloy. (D.I. 76 at 1) Defendants do not oppose the request and, therefore, Deloy will be voluntarily dismissed as a defendant pursuant to Fed. R. Civ. P. 41. Hence, the case proceeds solely on the retaliation claims against Phelps. The Amended Complaint alleges retaliation by Phelps following

---

[1]In 1983, Plaintiff pled guilty to rape second degree, conspiracy second degree, burglary first degree, and robbery first degree. He was sentenced to twenty years for the rape charge, five years for the conspiracy charge, ten years for the burglary charge, and ten years for the robbery charge, all sentences to be served consecutively. *See State v. Nave*, 2005 WL 1953079 (Del. Super. Ct. July 29, 2005). Plaintiff, and three fellow inmates, escaped from prison in December 1986 and, following a jury trial, he was convicted of escape after conviction, as well as two counts of conspiracy in the second degree, kidnapping in the second degree, and felony theft – and sentenced to a forty-nine year term of imprisonment. *See McCoy v. State*, 542 A.2d 1215 (Del. 1988) (table decision).

[2]The Court considers Plaintiff's opposition to the motion for summary judgment (D.I. 76) and will deny as moot the Motion for an Extension of Time to file the response (D.I. 75).

1

notification to the Board of Parole that Plaintiff would not be allowed to participate in treatment programs. Plaintiff alleges that, thereafter, his cell was searched by order of Phelps. Also, for a minor charge that normally has no serious repercussions, Plaintiff was transferred to the Security Housing Unit ("SHU").

Phelps was the warden at the James T. Vaughn Correctional Center ("JTVCC") from January 8, 2008 until July 9, 2013. (D.I. 74 at Phelps aff.) He is the current Bureau Chief of the Delaware Department of Correction ("DOC"). (*Id.*) On August 23, 2006, Plaintiff was denied parole based on the violent nature of his offense; prior failure parole/probation (escape); insufficient participation in appropriate treatment; Attorney General opposition; and poor institutional conduct. (D.I. 76 Ex. A) The Board of Parole recommended that Plaintiff work with his counselor to develop a plan for substance abuse treatment, mental health and violent offender counseling, and sex offender treatment. (*Id.*) In addition, the Board of Parole required Plaintiff to "complete Family Problems and Long-term Greentree, and improve [his] institutional behavior." (*Id.*) On December 28, 2007, the Institutional Base Classification Committee ("IBCC") did not approve Plaintiff's participation in the alternative to violence basic workshop ("AVP") or his participation in the Greentree Program. (D.I. 76 Ex. B)

On November 14, 2008, the VCC security team conducted a shakedown of Plaintiff's cell.[3] (D.I. 74 Ex. A-10) The officers found a radio speaker and two sunglass lenses among Plaintiff's property as well as a makeshift cuff-key and magazines over the allowable limit in his cellmate's property. (*Id.*) An incident report referred to violations of conditions of escape and

---

[3]Phelps denies that he issued a directive to search Plaintiff's cell with an order to find something. (*See* D.I. 67 at ¶ 5)

2

attempted escape, possession of dangerous contraband, abuse of privileges, creating a health, safety or fire hazard, failing to obey an order, and possession of non-dangerous contraband. (*Id.*) Plaintiff's cellmate was described as having psychological issues during the shakedown and being unaware of what was going on. (*Id.*) Plaintiff received an incident report for failing to obey an order and for possession of non-dangerous contraband. (*Id.* at Exs. A-11, A-12) A November 14, 2008 memorandum authored by Shift Commander Captain Jeffrey Carrothers ("Carrothers") states that he believed Plaintiff warranted confinement to a more restrictive setting based upon information presented and, that pending preview, Plaintiff was temporarily, administratively, transferred to higher security.[4] (*Id.* at Ex. A-8)

Plaintiff wrote letters inquiring why he was placed in SHU and, on December 15, 2008, he was told by a counselor that she was waiting for Plaintiff's write-up to be heard before she could certain paperwork. (D.I. 54 Ex. Cindy Atallian Dec. 15, 2008 Mem.) On December 23, 2008, Plaintiff was advised that he had been found guilty of possession of non-dangerous contraband. (*Id.* at Ex. F) On December 24, 2008, SHU Counselor Todd Kramer ("Kramer") advised Plaintiff that his classification remained pending to be heard by the IBCC. (*Id.* at Ex. Nov. 24, 2008 Kramer Mem.) On January 7, 2009, Plaintiff was advised by Major Michael F. Costello ("Costello") that he was being housed in SHU pending a classification review. (D.I. 79 Ex. D) On February 12, 2009, the IBCC recommended a Medium High Security ("MHU") classification and the Greentree program, despite Phelps' January 29, 2009 veto of the MHU classification. (D.I. 76 Exs. H, J) On May 27, 2009, Phelps advised Plaintiff that he was

---

[4] Plaintiff alleges that he was transferred to the Security Housing Unit ("SHU") following a verbal order by the Warden. (D.I. 54 at ¶¶ 12, 13)

3

appropriately housed and classified. (*Id.* at Ex. May 27, 2009 Phelps Mem.) In June 2009, Plaintiff was told that his transfer to SHU was an administrative transfer because Plaintiff was an escape risk and his classification score was overridden by administration. (*Id.* at Ex. M) IBCC classification results for Plaintiff on April 15, 2010 recommended MHU classification and MHU programs and, on and March 10, 2011, the IBCC recommended continuing MAX and MAX programs. (*Id.* at Exs. I, J) The April 15, 2010 IBCC note states that inmate "is on the 'remains in SHU' list," and the March 10, 2011 note states that inmate "is on the 'remains in SHU' list, override maximum security." (*Id.*) On June 13, 2011, Plaintiff was advised by Michael E. McMahon ("Mahon") that he was housed in SHU because security had placed him on the "remain in SHU" list as it was believed that Plaintiff was a risk to the safety and security of the institution and community. (D.I. 54 Ex. McMahon June 13, 2011 Mem.) According to Defendants' motion for summary judgment, in March 2014, following a classification review, Plaintiff was permitted to "flow down" from his former SHU housing assignment to MHU.[5]

Phelps states that the classification process that reclassified and placed Plaintiff in a higher security setting was conducted independent of his office. (D.I. 74 Ex. Phelps Aff. at ¶ 4) Phelps considered and approved the higher classification based upon the concerns of the Board of Parole when it rejected Plaintiff's parole application in the latter part of 2006, including: the violent nature of the offense; the Attorney General's opposition; insufficient participation in appropriate treatment; and poor institutional conduct. (*Id.* at ¶ 5) In addition, Phelps had concern due to a homemade cuff-key that was discovered during a routine shakedown of Plaintiff's cell shortly before the time he was transferred to SHU. (*Id.* at ¶ 6) Given Plaintiff's

---

[5]No documentation was provided to the Court to support this statement.

4

prior prison escape in 1986, Phelps felt it necessary to seek Plaintiff's reclassification to a higher security setting where his conduct and activities could be more closely monitored. (*Id.*) Phelps also considered statements reported to have been made by Plaintiff that he intended to use the cuff-key to aid him in an escape effort during a scheduled medical visit outside the VCC. (*Id.*) Phelps states that there was no "remains in SHU list" and that Plaintiff's flow-down to a lesser security setting was contingent on other factors. (*Id.* at ¶ 8) Phelps was unaware of any correspondence between Plaintiff and other third parties complaining of his placement in SHU and of Plaintiff's inability to participate in institutional programming. (*Id.* at ¶ 9) According to Phelps, his decision to approve Plaintiff's reclassification and transfer to SHU in 2008 was a legitimate penological interest to maintain security and safety within and without the facility's boundaries, based upon his knowledge of Plaintiff's prior criminal history and the nearly simultaneous discovery of a homemade cuff-key in Plaintiff's cell. (*Id.* at ¶ 10)

## III. AMENDMENT

Plaintiff moves to amend the Amended Complaint. (D.I. 62) Defendants oppose the motion. Pursuant to Fed. R. Civ. P. 15(a), a party may amend its pleading once as a matter of course within 21 days after serving it or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a Rule 12(b) motion, whichever is earlier. Otherwise, a party may amend its pleading only with the opposing party's written consent or the Court's leave. Rule 15 provides that the Court should freely give leave to amend when justice so requires.

The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco*

5

*Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990) (citations omitted). Amendment, however, is not automatic. *See Dover Steel Co., Inc. v. Hartford Accident and Indem.*, 151 F.R.D. 570, 574 (E.D. Pa. 1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Futility of amendment occurs when a complaint, as amended, does not state a claim upon which relief can be granted. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

The proposed Second Amended Complaint seeks to add a claim that Plaintiff is being wrongfully held in SHU. The Court previously dismissed claims of unlawful housing in SHU and will not revisit the issue. (*See* D.I. 52, 54) In addition, the proposed amendment raises claims against Deloy. Subsequent to filing the motion to amend, Plaintiff requested the voluntary dismissal of Deloy. The Court finds that the proposed amendment seeks to advance claims that are legally insufficient on its face. Therefore, the Court will deny the motion to amend.

## IV. SUMMARY JUDGMENT

### A. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine

6

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

**B.  Discussion**

Plaintiff alleges Phelps retaliated against him (following notification to the Board of Parole that Plaintiff would not be allowed to participate in treatment programs) when his cell was subsequently searched by order of Phelps and Plaintiff was then transferred to SHU for a minor charge that normally has no serious repercussions.

Defendants move for summary judgment on the grounds that: (1) Plaintiff's retaliation claim arose on or about November 14, 2008 and, therefore, is time-barred; (2) Plaintiff's

7

reclassification and transfer to SHU were based upon the legitimate penological reason of maintaining security and safety both within, and without, the correctional facility and would have occurred irrespective of any alleged protected activity in which Plaintiff might otherwise have been engaged; (3) Phelps is immune from liability in his official capacities under the Eleventh Amendment; and (4) Phelps is entitled to qualified immunity.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). The First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981). Proof of a retaliation claim requires a plaintiff to demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *See Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (stating factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights"). The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still

8

prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *See id.*

The United States Court of Appeals for The Third Circuit has incorporated the burden-shifting framework first set forth in *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977), into the prison context. *See Mincy v. Klem*, 277 F. App'x 239, 243 (3d Cir. May 6, 2008). In order to show a causal link, an inmate bears "the initial burden of proving that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333 (quoting *Mount Healthy*, 429 U.S. at 287). If the initial burden is met, the "burden then shift[s] to the defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." *Id.*

Even assuming that Plaintiff could satisfy the first and second prongs of the test as elucidated in *Rauser*, his claims fail under the *Mount Healthy* burden-shifting test. Defendants presented facts that Plaintiff was transferred to SHU due to legitimate penological interests. It is undisputed that Plaintiff has a history of escape from prison and, while the cuff-key was found in his cellmate's belongings, the fact remains that a cuff-key was found in Plaintiff's cell. Based upon his knowledge of Plaintiff's prior criminal history and the nearly simultaneous discovery of a homemade cuff-key in Plaintiff's cell, Phelps presented legitimate concerns in maintaining security and safety within, and without, the boundaries of the VCC.

Defendants have established a legitimate penological purpose for the action taken by Phelps. Based upon the record, a reasonable jury could not find that Plaintiff was a victim of retaliation. Accordingly, the Court will grant Defendants' Motion For Summary Judgment.[6] (D.I. 74)

## V. **CONCLUSION**

For the above reasons, the Court will deny Plaintiff's Motion to Amend (D.I. 62), will deny as moot Plaintiff's Motion for an Extension of Time (D.I. 75), will grant Plaintiff's Request to Voluntarily Dismiss Michael Deloy as a defendant (D.I. 76), and will grant Defendants' Motion for Summary Judgment (D.I. 74).

An appropriate Order will be entered.

---

[6]Inasmuch as the Court concludes that Phelps did not retaliate against Plaintiff, the Court will not address the remaining grounds for summary judgment raised by Defendants.